this morning, University of South Florida Board of Trustees v. CoMentis. Good morning. Good morning, Your Honors. May it please the Court, I'm Jerry Stock from of South Florida Board of Trustees. The trial court judgment should be reversed because the avid summary judgment opinion did determine that USF had a valid, quote, ownership interest, close quote, in the relevant patents. The key issue in this case is, the key contractual issue, is the meaning of that term, ownership interest. Yet the district court and CoMentis don't address the meaning of that critical contractual term. Instead, the district court and CoMentis focus solely on what the court's post-trial opinion. Why don't we start with the jurisdictional question? Yes, Your Honor. Tell me why we have jurisdiction here. Because... We have jurisdiction under diversity jurisdiction, if at all, right? No federal question here. Tell me why the Board of Trustees was not an arm of the state or a Florida citizen for purposes of diversity. Well, as we said in response to the court's second jurisdictional question, Your Honor, we think that the university is an arm of the state. It has 11th Amendment immunity, and the question then boils down to whether an entity with 11th Amendment immunity can be sufficiently separate to be a citizen for diversity purposes. Now, again, as we said in the papers, we don't think that that's possible, and this court's precedent says that it's the same test for 11th Amendment immunity and for diversity. Now, corporations are separate, generally speaking, and that's really the gist of CoMentis' opinion. You agree, though, that if you meet one test, you meet the other. I mean, that there's no set of entities that can be able to be a citizen for diversity purposes but not be immune under the 11th Amendment. Your Honor, this court has said it's the same test. So there is no such subset. In other words, one equals the other. You agree. That is our position, and I do agree. So that would mean that you shouldn't have brought the case in federal court. That means that we shouldn't have brought the case in federal court, yes, Your Honor. Thank you. No, that's clear. Thank you. Okay. Just on the jurisdictional point, I think it's clear that the University has 11th Amendment immunity, and so this court's Williams decision sort of lays out the factors. They were also stated in the Tubison case. State control is very important, and the Florida Constitution, in fact, in Article 9, Section 7, establishes a Board of Governors that says that the Board of Governors will have all manner of control over the boards of trustees of the state universities. Submission of budgets and physical control, submission of budgets by the university to the state is another factor that this court has noted in several cases, and so I don't think there can be much question about that. And so, yes, on jurisdiction, we think this case should not have been here. Do we have jurisdiction to entertain this appeal? If the answer is no, then we've got to dismiss the appeal for want of jurisdiction. It's as simple as that, isn't it? That's right, Your Honor. Wait a minute. I'm not sure that's correct. If the judgment went the other way, we'd have to have jurisdiction to reverse. I mean, we have jurisdiction. Our jurisdiction is not limited to diversity. Our jurisdiction is limited to reviewing final judgments of the district court, isn't it? Well, if there was no jurisdiction below, Your Honor . . . Then the district court entered a judgment in error, and whoever lost should appeal and get it reversed. Then we would reverse it and send it back and say dismiss for lack of jurisdiction. We certainly have to have jurisdiction to review actions of a district court beyond its jurisdiction, don't we? Very well, Your Honor. I'd like to then address the merits, if I may. Well, we're not . . . I wasn't suggesting you need to address the merits, because if it's clear that there's no jurisdiction, then it's clear what we should do. But we should do it. Well, obviously, we have got to review that issue. That's all I was saying. The question is, in reviewing the issue, if the district court had no diversity jurisdiction, it improvenantly went to the merits and dismissed, and it should have simply dismissed the case for want of jurisdiction. Is that what we should tell the district court here? Yes, Your Honor. I believe that is the answer and in the correct disposition. The court set the case for oral argument, which is why I'm here. In thinking about why that may have been done, I just would like to say that there was a recent decision, a per curiam decision last December in a case that involved the Mobile where the Eleventh Amendment issue was not discussed. One alternative would be what was done in that case, which is to . . . the court focused on corporate attributes and really didn't address the Eleventh Amendment issue at all. But, again, I think the proper and better disposition is to return it to the district court to dismiss . . . With directions to dismiss the case for lack of jurisdiction. Yes, Your Honor, because the university has Seventh Amendment immunity. This court has said it's the same test for diversity. An entity with Eleventh Amendment immunity can't be a citizen of the state for diversity purposes. That is correct. I would like to address the merits, however, in the event . . . Sure. I didn't mean to preclude you from doing that. But I go to the jurisdictional question first because if the district court lacked diversity jurisdiction, then we've got to remand with instructions to dismiss for lack of jurisdiction. Yes, Your Honor. That's not a merits determination. It's a determination of want of power to entertain the case in the first place. That is correct, Your Honor, and we do believe that is the correct disposition. But since that disposition has not been made yet, let me address the merits, if I may, in my remaining time. The district court in Comenius focused solely on the post-trial opinion by the district court and what that opinion supposedly said about the earlier summary judgment opinion. But that post-trial opinion could not possibly have informed the party's understanding of the contract because it didn't exist when the contract was entered. The position that the district court took and that Comenius advocated on the merits was entirely post hoc. The Comenius position and the district court ruling on the merits are also just flatly wrong as a matter of, again, quote, settled, close quote, federal circuit patent law and practice. And this is a very important point, which we made in the brief, but I want to emphasize here because I think it really goes to the guts of what's going on with this contract. The contract here, the settlement agreement, licenses to Comenius USF's patent rights and releases Comenius from infringement claims by USF. That's at 824 of the appendix is the license provision, 825.26 is the release. That's in the contract that the parties entered. That license of patent rights and release of infringement claims makes no sense unless USF had an ownership interest in the patents. Not in the inventions, but in the patents. And, again, as a matter of patent law, it's very clear, and there's just no question, that a partial owner of a patent or patents can license the entire patent. A partial owner of a patent can license the entire patent. That's Ethicon and other cases that we've cited. And so after the avid summary judgment opinion, USF was likely at least a partial owner of the patents. So by taking a license from a partial owner of the patent, Comenius got insulation from At a minimum, Comenius got an insurance policy against infringement. And when the avid summary judgment decision became final, Comenius had a permanent license, permanent insurance, from an adjudicated partial owner of the patents. That's what avid held under settled federal circuit law, and that's why the parties entered into this agreement. That's what Comenius got, and that's why Comenius is obligated to pay the contingent payment. And it's very telling that in its briefs here, and I believe in its briefs below, but certainly in its briefs here, Comenius doesn't address any of the relevant patent law. The Amgen cases we cited, the Film Tech case we cited, those are all correct statements of patent law. This contract was negotiated by experienced patent lawyers or in-house, at least, experience with patent law, and they knew that that summary judgment opinion gave USF an ownership interest in the patent. That's the term used in the patents. That's the term used in the contract, and the parties knew what that meant. It meant that Comenius was getting a license to the entire patents and insulation from infringement claims. And finally, if the court doesn't find a warrant of jurisdiction in the district court and remand with instructions to dismiss, then the court should reverse on the merits because the meaning of that contract term, ownership interest, is clear, and the avid district court did determine in its summary judgment opinion that USF had a valid ownership interest in the patents. That decision became final when the Federal Circuit affirmed the avid judgment and triggered the contingent payment provision. And so, if there are no further questions, thank you. Thank you very much. Thank you, Your Honors. And you have reserved three minutes for rebuttal. You've reserved three minutes for rebuttal. May it please the Court. Eric Walters of Davis Wright Tremaine for the FLE, Comentos, Inc. Let me address the jurisdictional argument first because Your Honors obviously had questions about that. In this case— You agree if the district court lacked diversity jurisdiction, we would have to remand with instructions to dismiss, right? If the court so found that there was— Tell me why the district court had diversity jurisdiction here. The district court had diversity jurisdiction here because we started with the coastal petroleum test, and that was laid out in 1983 by this court. That test, just to make sure where we stand, there's five factors. I don't think there's any dispute in USF's briefing that they met that test, the coastal petroleum test. Trustees can sue and be sued in their own name. No question about that. They did here. Can implead and be impleaded. Again, no question about that. Can contract in their own name. No question about that. This case is all about breach of contract. They can acquire, hold title to, and dispose of property in their own name. Again, no question about that. In fact, again, this is a dispute about—that relates to putative IP, intellectual property ownership rights. The last factor, the fifth factor, is considered a body corporate having the rights, powers, and immunities incident to corporations. Counsel, do you agree that it is the law of this circuit that whether you're subject to creating diversity in a diversity jurisdiction suit are coextensive categories, that there's nobody, there's no entity that's in one of those but not in the other? I would certainly agree that there are statements— You think that's not correct? I think that is not or should not be correct, and I'd be happy— I see. What are you doing? Have we not held that? I'm sorry? Have we not held that? In the coastal petroleum case, what the court did—and I'll read directly. Excuse me, that's the wrong one. So you're saying there's only one case where we've held that and it's dictum or something like that? Well, essentially what happened in coastal— I want to know what the state of the law is. The state of the law is there is no case that has found an exception. We are arguing that there should be a group of cases that it's virtually coextensive, but there is a group of cases where it doesn't— What about in other circuits? Does any other circuit recognize that? I'm not aware of either way. I'm not aware. Well, I can't speak for my colleagues, but I would be concerned about saying that there's jurisdiction in this case if it meant that all of these entities and similar entities had no 11th Amendment immunity. And there's a lot of cases, some of them are in unpublished cases and so forth, which say that these state universities—maybe I have the terminology wrong— but these kinds of universities have 11th Amendment immunity. We as a court need to be very careful not to upset all of that if it's— to do that under cover of a diversity suit would be problematic. So we would have to be on pretty firm ground to say that there's a basis for saying you can have one but not the other. And I think in this case we would argue that it's the other way around, that you could have a case, a circumstance where there's sovereign immunity, but there is still diversity jurisdiction that is— In the University of South Alabama case, counsel. Yes. On route to reaching the determination that the University of South Alabama was an arm of the state and therefore not a citizen for purposes of diversity, we reaffirmed our previous holding, quote, that the 11th Amendment immunity analysis is applicable to determinations of citizenship for the purposes of diversity jurisdiction. Did we not? Yes, we did. Our argument is that just kind of walking through it in coastal petroleum, the court is where the—as far as we know, where the court first adopted the sovereign immunity standard. And the standard that it adopted was the one I articulated a moment ago, the five-factor standard that the University of South Florida, under that standard they're clearly a citizen of the state and not an alter ego of the state. Of course, in Tuvison we adopted a four-factor test, didn't we? And that's the issue, is should the four-factor test— there is a statement, as you alluded to in the University of South Alabama case, relying on coastal petroleum with the statement that you just said. And those are the two cases that have so held. The University of South Alabama case was on a removal and there's a lot of language in the case about— Of course, the factors fairly overlap, don't they? I'm sorry? The factors overlap. Yes. I mean there was no reason to address the differences in the standards. There is a universe of cases, and this is clearly— if the court were inclined to find that there was sovereign immunity applicable to the University of South Florida, the five-factor test in coastal petroleum is clearly— comes to the opposite conclusion because you can walk through— there's not even a dispute. They don't even claim that you could apply those five factors and determine that the University of South Florida is an arm of the state for diversity purposes. And so I think what happened here historically is that— And one other thing before I get to the history. It's also clear, and the court has made clear, that diversity jurisdiction and sovereign immunity are distinct, but it adopted the standard for sovereign immunity in the diversity context in these particular cases. There's only two that have been cited by the other side. And what has happened is that sovereign immunity law has become much broader, and appropriately so, to protect public entities from incurring judgments that the state is going to have to pay. So if you look at the Supreme Court precedent in Moore and a similar scandal in coastal properties, the focus is really on, is this an independent entity? Does it act independently? And all those factors, is it established independently? Whereas in the sovereign immunity context, the concern is, are we going to saddle the state with a judgment or with something akin to a judgment? And so in our view, it was very appropriate and it was very handy for the court to use the sovereign immunity standard that had been adopted earlier, because that comes up far more often. There are far fewer— Of course 11th Amendment immunity is a waivable matter, whereas diversity is not. That's right. And so what you have is a situation where this law that was developed under the 11th Amendment of the Constitution to protect states and state entities from— protect their sovereignty by avoiding them incurring judgment unless they consent, which they often do. And in this case, if there were— they're a plaintiff, but they voluntarily came into court. So if there were a sovereign immunity issue, which there isn't, the state clearly consented. They availed themselves of the federal courts. There's no issue about that. And so then the question is, should that broadened sovereign immunity case law be coextensive with diversity law, which is completely different? And as this case demonstrates, this leads to some very unsettling results where the plaintiff can— which is acting completely independently. They have their patents that they claim that they have an ownership in. They're pursuing them. They pursued the legal action in Pennsylvania independently. They entered into contracts independently. They filed this lawsuit independently. They have outside counsel. They're not represented by the state. They're acting completely independently. They believe they're independent because they filed a complaint alleging diversity jurisdiction, alleging that they implicitly— that they are a citizen of the state of Florida, not that they are the state of Florida. So we have a circumstance where the— under Moore, which is the U.S. Supreme Court case, the Supreme Court— Of course, the state law defines the University of South Florida Board of Trustees as a state instrumentality. And there's no dispute that the state exerts a very high degree of control over the Board of Trustees. There's no dispute that the state provides funding for the Board of Trustees. There's no dispute that the state is responsible for judgments that might be rendered against the university's board. All of that's true, is it not? I would dispute at least the control issue. There is—they're authorized by statute, but they exert a considerable amount of independence, certainly under the Supreme Court standard in Moore as well as the coastal— What I said was they have a high— the state has a high degree of control. It may not be complete, but it's pretty substantial, isn't it? There's oversight, there's statute. The Board of Governors requires each Board of Trustees to adopt a strategic plan in alignment with the Board of Governors and so on. It's required to prepare a multi-year work plan report for the Board of Governors. It's required to submit an institutional budget request, including a request for fixed capital outlay. It's required to establish policies and procedures for the performance of annual internal audits and so on. The officials are appointed by the state, right? They are appointed by the state, yes. Doesn't all of that suggest a high degree of control? There is—I mean, I guess we're talking about— not quantitative, but qualitative situation. I would say that that's not materially different than the situation in coastal properties where the entity in that case was also subject to considerable amounts of oversight by the state. Right. But the determination ultimately in that case turned on the five factors, which in that case is really those factors, and I think the Supreme Court's teaching on who is a citizen for diversity— What about the source of the entity's funds? Doesn't that weigh in favor? There's certainly district court authority to that effect as well as other authority. Here we don't know what hasn't been put in the record, what— But we said in Hardin v. Adams— I'm sorry? We said in Hardin v. Adams many years ago that when the budget of an entity is submitted to the state for approval, this suggests the entity is an agency of the state for both purposes of control and funding? That is a statement certainly that this court made. So that would tip one way, not the other, would it not, that the state provides the funding? Well, we don't know that— They have not submitted any information about the extent of funding from the state versus— Why would they have to if the law is clear that the source of the funding is the state? I guess what I'm— Let me state it a different way. We don't know how much of the source of the funding is the state versus their own fundraising versus private funding for the university. Is the state responsible for judgments that might be rendered against the University of South Florida's Board of Trustees? Not directly. There is a state self-insurance fund that the university has stated in their briefs that they have signed up for. I am happy to turn to the merits for the remaining minute or two. I have limited time, so let me just address a couple high-level issues. The argument— There's sort of this doesn't make sense or this isn't what the parties negotiated. It seems to be one of the arguments that they made. But the district court in the Pennsylvania case, which is the underlying action, has rejected almost every one of the arguments that the university has made. They specifically found that they were not going to make a determination on ownership of the patent. They did not accept— There's this argument that they've made that there's all these Federal Circuit cases that are relevant. Those arguments were made to the Pennsylvania court and rejected. The court held that it was not going to make a determination on patent ownership and that the other entity involved, the Alzheimer's Institute of America, in fact had additional defenses, including equitable estoppel, that could be brought in a separate action. That court instructed or certainly suggested strongly that the University of South Florida should file a separate lawsuit and establish its ownership rights. It hasn't done so, and instead it sued our client. We don't think that it's even a close case under the district court got it right. There clearly and unequivocally was no finding of patent ownership. Thanks very much. Thank you very much. Thank you. Just a couple of quick points that I hope will be helpful to the court, Your Honors. First, this alleged coastal petroleum test, there was no separate test from this court in coastal petroleum. At 1318, what the court did was simply recite that the district court, I'm reading, the district court used a multi-factor analysis. But coastal also, as we noted in the papers, coastal did not have 11th Amendment. Excuse me, the trustees, the entity or the body in that case did not have 11th Amendment. In the exact quote that Judge Marcus read from the University of South Alabama case on page 412 of 168F3rd, that quote that Your Honor read is followed by a citation to coastal with a parenthetical that says, quote, holding that the analysis to determine whether a Florida Board of Trustees is a citizen for purposes of diversity is the same analysis used to determine whether the entity could evoke 11th Amendment immunity. So that was this court's understanding of coastal in the University of South Alabama case. The Williams... I have a question about, I'm just concerned that we'd be aware if we're creating a body of law that's out of sync with the rest of the country, which I'm not sure which way that cuts, but I really have no appreciation right now of how the Supreme Court or the other courts deal with this, what seems like kind of a basic issue. What about the Supreme Court cases that said that a state can waive its sovereign immunity under the 11th Amendment? There are such cases, right? That is correct, Your Honor. Are those not federal cases? They are, but diversity... They're not diversity cases. I think it's equally clear, if not more clear, that federal court jurisdiction cannot be created by a party's actions, and so... All right, I understand, but what was going on in those cases, I guess, is what I'm asking. They must not have been diversity cases then. Is that the answer? They couldn't have been diversity cases. That's right. You couldn't waive it. Well, I think Congress can waive 11th Amendment immunity as well, and I think that's happened, for example, in Title VII employment cases and so on. Sure, we're just talking about the diversity statute, is all, but I guess what we're saying is that all of those cases must not have been diversity cases. The 11th Circuit wouldn't be able to take the position that it does that these cases have the same standard. If I understand the question, I think that's right, that a state waiver of 11th Amendment immunity says nothing about a waiver of diversity jurisdiction. I don't. You can't waive your diversity jurisdiction. I'm just wondering whether the Supreme Court didn't assume that your opponent is correct, that there's a subcategory of cases where a state entity could be in diversity, even though we're arguing about its 11th Amendment immunity. Yes, Your Honor. I'm sorry that I can't help you on that today, other than to say that the Moore case from the Supreme Court is clearly different. That was a political subdivision, and there's a long line of cases. Political subdivision is clearly not the state. It's separate from the state, and corporate powers were mentioned there, but I think other principles were at work. If there are no further questions, I think... Thank you again. Thanks very much. Thank you both. This court will be in recess until 9 a.m. tomorrow morning.